**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - -X
IRVING MASON,                       :
                                    :
                    Petitioner,     :
                                    :
    -against-                       :
                                    :   04 Civ. 2198 (JFK)
                                    :   96 Cr. 126 (JFK)
                                    :   **OPINION and ORDER**
UNITED STATES OF AMERICA,           :
                                    :
                    Respondent.     :
- - - - - - - - - - - - - - - - - -X

APPEARANCES:

   For Petitioner Irving Mason:

      ROCHMAN PLATZER FALLICK STERNHEIM LUCA & PEARL, LLP
      666 Third Avenue, 17th Floor
      New York, New York 10017
         Of Counsel: Barry M. Fallick, Esq.

   For Respondent United States of America:

      DAVID N. KELLEY,
      United States Attorney for the
      Southern District of New York
      One Saint Andrew's Plaza
      New York, New York 10007
      Of Counsel: AUSA Steven R. Peikin


**JOHN F. KEENAN, United States District Judge**

**JOHN F. KEENAN, United States District Judge**:

Before the Court is the petition of Irving Mason ("Mason"), pursuant to 28 U.S.C. § 2255 ("§ 2255"), to vacate his judgment of conviction. For the reasons that follow, the petition is denied.

## BACKGROUND

Mason was charged in twelve counts of a Superseding Indictment filed on January 12, 2000. He was convicted on six counts: conducting and participating in the affairs of a racketeering enterprise in violation of the Racketeer Influences and Corrupt Organization Act ("RICO") (18 U.S.C. § 1962); RICO conspiracy (18 U.S.C. § 1962(d)); conspiracy to commit robbery, (18 U.S.C. § 1951); attempted robbery (18 U.S.C. §§ 1951, 1952); possessing a firearm (18 U.S.C. § 922(g)); and possessing ammunition (18 U.S.C. § 922(g)). The Court sentenced Mason on these counts to 240, 120, 240, 240, 120 and 120 months respectively, with the first two sentences running consecutively and the rest concurrently. Mason therefore received 360 months' imprisonment, along with three years of supervised release. Mason's conviction was affirmed on appeal. United States v. Mitchell, 51 Fed. Appx. 355 (2d Cir. Nov. 21, 2002); cert. denied, 538 U.S. 939 (2003).

Mason's various offenses related to his participation in the 148th Street Organization, a violent drug gang that

operated in Upper Manhattan from the late 1980's through June 1999. On July 4, 1997, Mason and others attempted to rob Eric Connor ("Conner"), a drug dealer who regularly traveled to Upper Manhattan to purchase narcotics, in the vicinity of West 147th Street and Amsterdam Avenue.  In the course of the attempted robbery, one of Mason's accomplices, Sean Blair, shot Conner several times.  Thereafter, Mason and all of his accomplices fled, leaving Conner lying on the street bleeding from multiple gun shot wounds.

At trial, the attorney for Mason's co-defendant, Aldo Mitchell ("Mitchell"), called Kerri Pedersen ("Pedersen") to the stand to provide an alibi for Mitchell with respect to the Conner incident.  Pedersen testified that she and three friends traveled together to Miami, Florida, on July 3, 1997 and that Mitchell, her boyfriend at the time, also traveled that day to Miami, albeit separately.  Pedersen claimed that she and Mitchell were together at the Shelborne Hotel in South Beach, Miami, until July 10, 1997.  To support the alibi, Pedersen offered a series of photographs she claimed had been taken on the grounds of the Shelborne during the trip.

To rebut Pedersen's testimony, the Government called Maria Ricardo ("Ricardo"), an employee of the Shelborne.  Ricardo testified that the photographs of Pedersen and Mitchell on the grounds of the Shelborne could not have been taken during July 3-

10, 1997 because various items visible in the backgrounds of the photographs were not installed on the grounds of the hotel until the following year.

During closing statements, Mitchell's attorney conceded to the jury that Pedersen's testimony was false:

> The difference here in the lesson that I hope to impart to you during the course of my remarks is that I will not ask you to rely on the testimony of Kerry Pedersen. I saw Kerry Pedersen for what she was, as did you. She was a liar, plain and simple. Was she motivated by love? I'd like to think so. I have no idea. What motivates somebody, a single parent with a professional license, with her whole life ahead of her to do what she did?

(Tr. at 4277-78).[1] The Government in its closing statements also emphasized Pedersen's false testimony as well as her lack of credibility:

> If the holes in Kerri Pedersen's story and the absence of this evidence weren't enough to help you discard this alibi defense, you have the testimony of Maria Ricardo, the operations manager of the Shelborne Beach Resort. What does she say? Well she looks at these pictures that Kerri Pedersen offered . . . and she tells you, These could not have been taken in July of 1997. . . . They weren't done until a year later.

(Tr. at 4142).

The jury began its deliberations on July 19, 2000. On July 21, 2000, the jury sent a note to the Court which read:

> Your Honor, the jury understands that the testimony of cooperating witnesses is supposed to be considered as direct evidence. Two of the jurors

---

[1] "Tr." refers to the transcript of the trial.

4

> considered and rejected all the testimony of the cooperating witnesses. We have tried to vote on a number of charges, but can never reach a unanimous decision, save one count, where cooperating witnesses were not involved. We are at an impasse, we need your advice.

(Tr. at 4503). After correcting the jury's imprecise use of the term "direct evidence," the Court observed that the note originally said that two of the jurors "refused to consider" cooperating witness testimony. "Refused to consider" was crossed out and replaced with "considered and rejected." The Court instructed the jury that "considered and rejected" was different from "refused to consider," and that the latter was improper. The Court also noted that the sentence "We have tried to vote on the charges" was crossed out and changed to "We have tried to vote on a number of charges." Observing that the corrected version meant that the jury had not yet considered all of the charges, the Court, with the agreement of counsel, informed the jury that it should continue its deliberations. (Tr. at 4507-08).

On July 28, 2000, after seven and one-half days of deliberation, the jury convicted Mason on six counts, acquitted him on three, and failed to reach a verdict on the remaining three counts. The Court sentenced him to 360 months, as discussed above on page 2. Having exhausted his direct appeals, Mason now collaterally attacks his conviction and sentence. In support of his § 2255 petition, he raises the following claims: (1) a Sixth Amendment violation arising from the ineffective

assistance of Mitchell's attorney in connection with Pedersen's false testimony and (2) a violation of Blakely v. Washington, 542 U.S. 296 (2004), because the Court imposed Mason's sentence on the basis of enhancements not found by the jury beyond a reasonable doubt.

## DISCUSSION

Mason's first claim alleges ineffective assistance of his co-defendants' counsel. He contends that, but for the false testimony of Pedersen, he would not have been convicted of the RICO claims. He argues that Mitchell's counsel failed to adequately prepare for questioning of the witness, and that the Government warned counsel that Pedersen's alibi testimony would be proven false (Tr. at 3756-57). Mason contends that Mitchell's counsel was ineffective for putting Pedersen on the stand anyway, and the ineffectiveness spills over and taints his conviction.

While it is true that a defendant may raise an ineffective assistance of counsel argument for the first time on collateral attack, Massaro v. United States, 538 U.S. 500, 503-04 (2003), the Court can find no case extending the holding of Massaro to ineffectiveness claims against a co-defendant's counsel. Without reaching the question of whether this kind of ineffectiveness claim can be asserted at all, the Court concludes that Mason has not shown prejudice arising from the alleged ineffectiveness. See Strickland v. Washington, 466 U.S. 668

(1984). In order to demonstrate prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694.

Mason contends that Pedersen's testimony ended up corroborating testimony from the co-conspirators. Mason notes that he and Mitchell were tried together on the July 4, 1997 acts, and the jury would have been unable not to consider Pedersen's false testimony in deciding the case as to him. Mason argues that because some jurors suggested during deliberations that they had a problem convicting solely on accomplice testimony, his application should be granted. This does not help Mason's cause. Both the Government and Mitchell's attorney advised the jury to disregard Pedersen's testimony. (Tr. at 4141-42, 4277-78, 4349-50).

Most importantly, the Court twice instructed the jury that Mitchell's false alibi was admissible solely against him and not against Mason. (Tr. at 4144, 4461). "[J]uries are presumed to follow their instructions." Zafiro v. United States, 506 U.S. 534, 540 (1993). The July 21, 2000 jury note does not change this analysis. Even though the note stated that two jurors had considered and rejected all cooperating witness testimony, the presumption must be that the two jurors eventually modified their views as to the cooperators, not that they (or other jurors)

7

disregarded the Court's instructions and convicted Mason on the basis of Pedersen's testimony. See Allen v. United States, 164 U.S. 492, 501 (1896) ("While, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury room."). Mason has failed to establish that the result would have been different for him but for Pedersen's testimony.

In addition, Mason fails to demonstrate that Mitchell's counsel acted below an objective standard of reasonableness under prevailing professional norms. See Strickland, 466 U.S. at 690 ("The court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."). An attorney's decision to call a particular witness to the stand is a strategic one that generally does not leave the attorney vulnerable to a claim of ineffective assistance. See United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000).

Finally, Mason's Blakely argument fails. Since Mason filed his motion, the Supreme Court decided United States v. Booker, 125 S. Ct. 738 (2005), which makes the Sentencing Guidelines advisory. The Second Circuit has made clear that Booker challenges may not be brought on collateral attack. Guzman v. United States, 404 F.3d 139, 144 (2d Cir. 2005). The

Court notes that Mason's sentence passed muster under Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), because the Court did not enhance Mason's sentences above the statutory maximum on any of the counts. See 18 U.S.C. §§ 924(a)(2); 1951(a); 1963.

## CONCLUSION

Mason's § 2255 petition is denied. Case No. 04 Civ. 2198(JFK) shall be closed, and the Clerk of the Court is directed to remove it from the active docket.

**SO ORDERED.**

**Dated: New York, New York
August 9, 2005**

JOHN F. KEENAN
United States District Judge